1124.8404E.CMR

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | No. 18-27584 |
| DEBBIE L. MIZE, | ) | Chapter: 13 |
| | ) | Judge: Deborah L. Thorne |
| Debtor. | ) | |

### NOTICE OF MOTION

TO:     Marilyn O'Marshall, *Trustee,* 224 South Michigan Avenue, Suite 800, Chicago, IL 60604 – *Via CM/ECF Notification*

Patrick S. Layng, *U.S. Trustee*, Office of the U.S. Trustee, Region 11, 219 S. Dearborn Street, Room 873, Chicago, IL 60604 – *Via CM/ECF Notification*

David M. Siegel, *Attorney for Debtor*, David M. Siegel & Associates, 790 Chaddick Drive, Wheeling, IL 60090 – *Via CM/ECF Notification*

Debbie L. Mize, *Debtor*, 1642 Joplin Circle, Elk Grove Village, IL 60007 – *Via Regular Mail*

YOU ARE HEREBY NOTIFIED that on **Wednesday, the 26th** day of **February 2020 at 9:30 a.m.,** I shall appear before her Honor, **Judge Deborah L. Thorne**, or such Judge as may be holding court in her absence, in the courtroom usually occupied by her, in the **U.S. Bankruptcy Court for the Northern District of Illinois, Eastern Division, Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Courtroom 613, Chicago, Illinois, 60604**, and shall then and there present the attached **Motion to Dismiss for Failure to Make Plan Payments**, on behalf of Creditor Andigo Credit Union f/k/a Motorola Employees Credit Union, a copy of which is attached hereto and served herewith upon you, at which time and place you may appear if you see fit to do so.

By:     /s/ Christine M. Ryan

Christine M. Ryan, Attorney for Creditor
Andigo Credit Union f/k/a Motorola Employees Credit Union

### CERTIFICATE OF SERVICE

I hereby certify that on January 14, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the attorneys of record named above.

And I hereby certify that I have mailed by United States Postal Service, Regular Mail, the documents to the following non-CM/ECF participant, Debbie L. Mize, *Debtor*, 1642 Joplin Circle, Elk Grove Village, IL 60007.

/s/ Christine M. Ryan
Christine M. Ryan (6276787)
Attorney for Creditor Andigo Credit Union
Esp Kreuzer Cores LLP
400 S. County Farm Road, Suite 200
Wheaton, IL 60187
630/871-1002
630/871-0224 fax
cryan@ekclawfirm.com

1124 8404E CMR

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | No. 18-27584 |
| DEBBIE L. MIZE, | ) | Chapter: 13 |
| | ) | Judge: Deborah L. Thorne |
| Debtor. | ) | |

## <u>MOTION TO DISMISS FOR FAILURE TO MAKE PLAN PAYMENTS</u>

NOW COMES a secured creditor, ANDIGO CREDIT UNION f/k/a MOTOROLA EMPLOYEES CREDIT UNION, by and through attorneys, ESP KREUZER CORES LLP, and requests dismissal of the above case pursuant to 11 USC 1307(c)(6), and in support thereof, states the following:

1.      The Debtor is in material default with respect to the terms of the plan as confirmed by this Court in that the payments by the debtor directly to creditor Andigo Credit Union f/k/a Motorola Employees Credit Union have not been made as proposed.

2.      On October 1, 2019, the above-named Debtor filed a voluntary Chapter 13 Bankruptcy petition.

3.      Movant, Andigo Credit Union f/k/a Motorola Employees Credit Union, is a secured creditor of Debtor with regard to a mortgage loan for the primary residential property located at 1642 Joplin Circle, Elk Grove Village, Illinois 60007. (See **Exhibit A.**)

4.      On October 30, 2018, creditor Andigo Credit Union f/k/a Motorola Employees Credit Union filed its proof of claim as Claim 2 on its secured claim with regard to the mortgage loan.

5.      On January 3, 2019, debtor filed an Amended Chapter 13 Plan in which she indicated that she would personally disburse and pay Andigo Credit Union $265.00, the current contractual installment payment. (See **Exhibit B.**)

6.      The debtor's plan was confirmed on January 16, 2019. (See **Exhibit C.**)

7.     In her confirmed Plan, debtor was to make direct monthly payments to secured creditor Andigo Credit Union f/k/a Motorola Employees Credit Union and she did so until June 27, 2019.  (See **Exhibit B**.)

8.     Andigo Credit Union f/k/a Motorola Employees Credit Union has not received any payments from debtor since June 27, 2019.  (See **Exhibit D**.)

9.     Due to debtor's failure to make plan payments directly to creditor Andigo Credit Union d/b/a Motorola Employees Credit Union, the debt owed is currently $1,502.00 in arrears.

10.     Debtors' failure to comply with her own Chapter 13 Plan requiring her to timely make regular monthly payments to Andigo Credit Union f/k/a Motorola Employees Credit Union in the amount of $265.00 monthly is sufficient grounds for this Court to dismiss the case pursuant to 11 U.S.C. §1307(c)(6).

WHEREFORE, ANDIGO CREDIT UNION f/k/a MOTOROLA EMPLOYEES CREDIT UNION, a secured creditor, respectfully requests that this case be dismissed for material default by Debtor DEBBIE L. MIZE with respect to the terms of the confirmed Chapter 13 Plan pursuant to Section 1307(c)(6), and for any and all other relief this Court deems just and proper.

Respectfully submitted,

/s/ Christine M. Ryan
CHRISTINE M. RYAN, Attorney for Creditor,
ANDIGO CREDIT UNION f/k/a
MOTOROLA EMPLOYEES CREDIT UNION
Esp Kreuzer Cores LLP
400 S. County Farm Road, Suite 200
Wheaton, Illinois 60187
630/871-1002 * 630/871-0224 Fax
cryan@ekclawfirm.com

2

Fill in this information to identify the case:

Debtor 1   **DEBBIE MIZE**

Debtor 2
(Spouse if filing)

United States Bankruptcy Court for the:   Northern District of Illinois

Case number   18-27584

---

Official Form 410

# Proof of Claim

04/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
| --- | --- |

**1. Who is the current creditor?**

ANDIGO CREDIT UNION
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor   MOTOROLA EMPLOYEES CREDIT UNION (MECU)

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

ESP KREUZER CORES LLP
Name

400 S. County Farm Road, Suite 200
Number      Street

Wheaton          IL          60187
City               State        ZIP Code

Contact phone   630/871-1002 x538

Contact email   cryan@ekclawfirm.com

Where should payments to the creditor be sent? (if different)

ANDIGO CREDIT UNION
Name

1501 E. Woodfield Road, Suite 400W
Number      Street

Schaumburg        IL          60173
City               State        ZIP Code

Contact phone   847/538-1316

Contact email   Randy.Long@andigo.org

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known) _____

Filed on _____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? _____


EXHIBIT
A
ALL-STATE LEGAL

**Part 2:**    **Give Information About the Claim as of the Date the Case Was Filed**

**6. Do you have any number you use to identify the debtor?**

☐ No

☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:  _3_  _8_  _4_  _0_

**7. How much is the claim?**    $_____29,992.68_. Does this amount include interest or other charges?

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

_Mortgage_____

**9. Is all or part of the claim secured?**

☐ No

☑ Yes. The claim is secured by a lien on property.

Nature of property:

☑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.

☐ Motor vehicle

☐ Other. Describe: _____

Basis for perfection: _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:    $____325,000.00

Amount of the claim that is secured:    $____29,992.68

Amount of the claim that is unsecured: $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition:    $____0.00

Annual Interest Rate (when case was filed) _5.50_ %

☐ Fixed

☑ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. Amount necessary to cure any default as of the date of the petition.    $_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

| 12 Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No | | |
|---|---|---|---|
| | ☐ Yes. *Check one* | | **Amount entitled to priority** |
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | | $ _____ |
| | ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | | $ _____ |
| | ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | | $ _____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | | $ _____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | | $ _____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | | $ _____ |
| | * Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment. | | |

## Part 3:  Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

*Check the appropriate box*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  10/26/2018
MM / DD / YYYY

_signature_

Print the name of the person who is completing and signing this claim:

| Name | Christine M. Ryan | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Attorney | | |
| Company | Esp Kreuzer Cores LLP | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer | | |
| Address | 400 S. County Farm Road, Suite 200 | | |
| | Number  Street | | |
| | Wheaton | IL | 60187 |
| | City | State | ZIP Code |
| Contact phone | 630/871-1002 x538 | Email | cryan@ekclawfirm.com |

## Mortgage Proof of Claim Attachment

(12/15)

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See separate instructions.

| Part 1: Mortgage and Case Information | Part 2: Total Debt Calculation | Part 3: Arrearage as of Date of the Petition | Part 4: Monthly Mortgage Payment |
|---|---|---|---|
| Case number: 18-27584 | Principal balance: 29,992.68 | Principal & interest due: | Principal & Interest $265.00 |
| Debtor 1: | Interest due: | Prepetition fees due: | Monthly escrow |
| Debtor 2: | Fees, costs due: | Escrow deficiency for funds advanced | Private mortgage insurance: |
| Last 4 digits to identify: 3 8 4 0 | Escrow deficiency for funds advanced: | Projected escrow shortage: | Total monthly payment: $265.00 |
| Creditor: Andigo Credit Union | Less total funds on hand | Less funds on hand | |
| Servicer: | Total debt: 29,992.68 | Total prepetition arrearage: | |
| Fixed accrual/daily simple interest/other: $4.52 | | | |

### Part 5: Loan Payment History from First Date of Default

| | | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
| | See Attached | | | | | | | | | | | | | | | |

Official Form 410A                    Mortgage Proof of Claim Attachment                    page 1 of __

**STATE OF ILLINOIS
DEPARTMENT OF FINANCIAL AND PROFESSIONAL REGULATION
DIVISION OF FINANICAL INSTITITIONS
CREDIT UNION SECTION**

**CERTIFICATE OF PROCEEDINGS
AMENDMENT TO BYLAWS**

STATE OF ILLINOIS  )
        ) SS
COUNTY OF COOK  )

I hereby certify that at a <u>Special</u> meeting of the members of the MOTORLA EMPLOYEES CREDIT UNION, held on this date <u>May 6, 2016</u>, pursuant to the notice required by Article XXI of the Bylaws of the said Credit Union and by Section 305/4 of the Illinois Credit Union Act, approved August 30, 1979, and in force January 1, 1980, as amended, the following Resolution was adopted.

**RESOLVED:**  **THAT ARTICLE I - NAME & LOCATION AND & ARTICLE XX - OFFICIAL SEAL, OF THE BYLAWS OF THIS CREDIT UNION BE AMENDED TO READ TO AS FOLLOWS:**

<u>Article I</u>  The name of this corporation shall be "ANDIGO CREDIT UNION". It shall be located in the City of Schaumburg, County of Cook, in the State of Illinois.

<u>Article XX</u>  The official seal of the credit union shall be a disc with the words "ANDIGO CREDIT UNION" and the name of the city in the margin, and the words "Corporate Seal" in the center, and the Secretary shall be responsible for its custody and safekeeping.

I further certify on the date of said meeting of the MOTOROLA EMPLOYEES CREDIT UNION, that a quorum was met and that a majority of the members present voted in favor of the above Resolution.

I, <u>Ann M. Simms</u>, being duly sworn, declare on oath that I am Chairperson of the Board of the MOTOROLA EMPLOYEES CREDIT UNION, and that the statements made therein are true in substance and in fact on this date <u>May 12, 2016</u>.

Approved by me

Director of Financial Institutions
By Credit Union Section Supervisor

On this Date <u>May 16, 2016</u>

Page 1 of 2
CUFORM 16

**STATE OF ILLINOIS
DEPARTMENT OF FINANCIAL AND
PROFESSIONAL REGULATION
DIVISION OF FINANICAL INSTITIUTIONS
CREDIT UNION SECTION**

**CERTIFICATE OF PROCEEDINGS
AMENDMENT TO ARTICLES OF
INCORPORATION**

STATE OF ILLINOIS     )
                         ) SS
COUNTY OF COOK     )

     I hereby certify that at a <u>Special</u> meeting of the members of the **MOTOROLA EMPLOYEES CREDIT UNION**, held on this date <u>May 6, 2016</u>, pursuant to the notice required by Article XXI of the Bylaws of the said Credit Union and by Section 305/4 of the Illinois Credit Union Act, approved August 30, 1979, and in force January 1, 1980, as amended, the following Resolution was adopted.

**RESOLVED: THAT THE ARTICLES OF INCORPORATION OF THIS CREDIT UNION BE AMENDED TO READ AS FOLLOWS:**

(Recording Area)

<u>Item 1</u>.    That the name of the corporation shall be "<u>**ANDIGO CREDIT UNION**</u>".

     I further certify on the date of said meeting of the **MOTOROLA EMPLOYEES CREDIT UNION**, that a quorum was met and that a majority of the members present voted in favor of the above Resolution.

     I, <u>Ann M. Simms</u>, being duly sworn, declare on oath that I am Chairperson of the Board of the **MOTOROLA EMPLOYEES CREDIT UNION**, and that the statements made therein are true in substance and in fact on this date <u>May 12, 2016</u>.

Approved by me

_____
Director of Financial Institutions
By Credit Union Section Supervisor

On this Date <u>May 16, 2016</u>

Page 2 of 2
CU FORM 16A

| | |
|---|---|
| **Illinois Anti-Predatory Lending Database Program**<br><br>**Certificate of Exemption**<br><br><br><br>**Report Mortgage Fraud**<br>**800-532-8785** | Doc#. 1527356071 Fee: $60.00<br>Karen A. Yarbrough<br>Cook County Recorder of Deeds<br>Date: 09/30/2015 09:17 AM Pg: 1 of 7 |

The property identified as:   **PIN: 07-36-310-015-0000**

**Address:**
**Street:**     1642 JOPLIN CIRCLE
**Street line 2:**
**City:** ELK GROVE VILLAGE        **State:** IL            **ZIP Code:** 60007

**Lender:** MOTOROLA EMPLOYEES CREDIT UNION

**Borrower:** DEBBIE L. MIZE

**Loan / Mortgage Amount:** $15,000.00

This property is located within the program area and the transaction is exempt from the requirements of 765 ILCS 77/70 et seq. because the application was taken by an exempt entity.

**Certificate number:** 6AF686EA-8EF6-49B0-B561-4F7A3363BF64            **Execution date:** 9/17/2015

# Illinois Anti-Predatory Lending Database Program

## Certificate of Exemption

1527356071    COOK
9/30/15    9:17

**Report Mortgage Fraud**
**800-532-8786**

The property identified as:    PIN:  07-36-310-015-0000

**Address:**
**Street:**    1642 JOPLIN CIRCLE
**Street line 2:**
**City:**  ELK GROVE VILLAGE    **State:**  IL    **ZIP Code:**  60007

**Lender:** MOTOROLA EMPLOYEES CREDIT UNION

**Borrower:** DEBBIE L. MIZE

**Loan / Mortgage Amount:** $15,000.00

This property is located within the program area and the transaction is exempt from the requirements of 765 ILCS 77/70 et seq. because the application was taken by an exempt entity.

**Certificate number:** 6AF686EA-8EF6-49B0-B561-4F7A3353BF64    **Execution date:** 9/17/2015

This instrument was prepared by:

Lindsay Levander
MECU
1205 E Algonquin Rd.
Schaumburg, IL 60196-1065


When Recorded, Mail To:
Motorola Employees Credit Union
1205 E Algonquin Rd.
Schaumburg, IL 60196-1065

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# REVOLVING CREDIT MORTGAGE

THIS MORTGAGE CONTAINS A DUE-ON-SALE PROVISION AND SECURES INDEBTEDNESS UNDER A CREDIT AGREEMENT WHICH PROVIDES FOR A REVOLVING LINE OF CREDIT AND MAY CONTAIN A VARIABLE RATE OF INTEREST.

THIS MORTGAGE is made on _____ September 17th, 2015 _____, between the Mortgagor, DEBBIE L. MIZE


(herein "Borrower"), and the Mortgagee, Motorola Employees Credit Union
a corporation organized and existing under the laws of Illinois
whose address is 1205 E Algonquin Rd., Schaumburg, IL 60196-1065

(herein "Lender").

WHEREAS, Borrower is indebted to Lender as described in this paragraph;
TO SECURE to Lender:
(1) The repayment of all indebtedness due and to become due under the terms and conditions of the LOANLINER Home Equity Plan Credit Agreement and Truth-in-Lending Disclosures made by Borrower and dated the same day as this Mortgage, and all modifications, amendments, extensions and renewals thereof (herein "Credit Agreement"). Lender has agreed to make advances to Borrower under the terms of the Credit Agreement, which advances will be of a revolving nature and may be made, repaid, and remade from time to time. Borrower and Lender contemplate a series of advances to be secured by this Mortgage. The total outstanding principal balance owing at any one time under the Credit Agreement (not including finance charges thereon at a rate which may vary from time to time, and any other charges and collection costs which may be owing from time to time under the Credit Agreement) shall not exceed Fifteen Thousand And No/100

($15,000.00        ). That sum is referred to herein as the Maximum Principal Balance and referred to in the Credit Agreement as the Credit Limit. The entire indebtedness under the Credit Agreement, if not sooner paid, is due and payable  15  years from the date of this Mortgage.
(2) The payment of all other sums advanced in accordance herewith to protect the security of this Mortgage, with finance charges thereon at a rate which may vary as described in the Credit Agreement.
(3) The performance of the covenants and agreements of Borrower herein contained;
BORROWER does hereby mortgage, warrant, grant and convey to Lender the following described property located in the County of Cook                                                            , State of Illinois:

● CUNA MUTUAL GROUP, 1991, 2000, 05, 11,
  ALL RIGHTS RESERVED

EIL93B-e

. .

LOT 15 IN BLOCK 16 WINSTON GROVE SECTION 22 SOUTH, BEING A SUBDIVISION IN PARTS
OF SECTIONS 35 AND 36, TOWNSHIP 41 NORTH, RANGE 10 EAST OF THE THIRD PRINCIPAL
MERIDIAN ACCORDING TO THE PLAT THEREOF RECORDED IN THE RECORDER'S OFFICE OF COOK
COUNTY, ILLINOIS MARCH 30, 1977 AS DOCUMENT NUMBER 23869152 IN COOK COUNTY,
ILLINOIS

which has the address of  1642 JOPLIN CIRCLE
                                                (Street)
Elk Grove Village                                               , Illinois  60007   (herein
                          (City)                                           (Zip Code)
"Property Address");

Property Tax ID No.: 07-36-310-015-0000

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights,
appurtenances and fixtures, all of which shall be deemed to be and remain a part of the property covered by this
Mortgage; and all of the foregoing, together with said property (or the leasehold estate if this Mortgage is on a
leasehold) are hereinafter referred to as the "Property."

Complete if applicable:
This Property is part of a condominium project known as _____

This Property includes Borrower's unit and all Borrower's rights in the common elements of the condominium
project.
This Property is in a Planned Unit Development known as _____

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to
mortgage, grant and convey the Property, and that the Property is unencumbered, except for encumbrances of
record. Borrower covenants that Borrower warrants  and will defend generally the title to the Property against all
claims and demands, subject to encumbrances of record.
     Borrower and Lender covenant and agree as follows:
     1. Payment of Principal, Finance Charges and Other Charges. Borrower shall promptly pay when due all
amounts borrowed under the Credit Agreement, all finance charges and applicable other charges and collection
costs as provided in the Credit Agreement.
     2. Funds for Taxes and Insurance. Subject to applicable law, Lender, at Lender's option, may require
Borrower to pay to Lender on the day monthly payments of principal and finance charges are payable under the
Credit Agreement, until all sums secured by this Mortgage are paid in full, a sum (herein "Funds") equal to
one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assess-
ments, if any) which may attain priority over this Mortgage, and ground rents on the Property, if any, plus
one-twelfth of yearly premium installments for hazard insurance and flood insurance, if applicable, all as
reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and
reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the
extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an
institutional Lender.

EIL93B-e

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a Federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Mortgage that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Mortgage.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Mortgage, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 22 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Mortgage.

3.  Application of Payments. Unless applicable law provides otherwise, all payments received by Lender under the Credit Agreement and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, second, (in the order Lender chooses) to any finance charges, other charges and collection costs owing, and third, to the principal balance under the Credit Agreement.

4.  Prior Mortgages and Deeds of Trust; Charges; Liens. Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage, including Borrower's covenants to make payments when due. Except to the extent that any such charges or impositions are to be paid to Lender under paragraph 2, Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Mortgage, and leasehold payments or ground rents, if any. Within five days after any demand by Lender, Borrower shall exhibit to Lender receipts showing that all amounts due under this paragraph have been paid when due.

5.  Hazard Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," floods, and such other hazards as Lender may require and in such amounts and for such periods as Lender may require. Unless Lender in writing requires otherwise, the policy shall provide insurance on a replacement cost basis in an amount not less than that necessary to comply with any coinsurance percentage stipulated in the hazard insurance policy, and the amount of coverage shall be no less than the Maximum Principal Balance plus the full amount of any lien which has priority over this Mortgage.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. All insurance proceeds are hereby assigned to Lender and shall be paid to Lender to the extent of all sums secured by this Mortgage, subject to the terms of any mortgage, deed of trust or security agreement with a lien which has priority over this Mortgage. Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restore or repair the Property, if it is economically feasible to do so.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Mortgage.

6.  Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments. Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Mortgage is on a leasehold. If this Mortgage is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and the constituent documents.

7.  Protection of Lender's Security. If Borrower fails to perform the covenants and agreements contained in this Mortgage, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. Any

amounts disbursed by Lender pursuant to this paragraph 7, with finance charges thereon, at the rate provided in the Credit Agreement, shall become additional indebtedness of Borrower secured by this Mortgage. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder. Any action taken by Lender under this paragraph shall not cure any breach Borrower may have committed of any covenant or agreement under this Mortgage. Borrower agrees that Lender is subrogated to all of the rights and remedies of any prior lienor, to the extent of any payment by Lender to such lienor.

8. **Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

9. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, to the extent of any indebtedness under the Credit Agreement, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

10. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Mortgage granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Mortgage by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

11. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 21 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Mortgage, but does not execute the Credit Agreement, (a) is co-signing this Mortgage only to mortgage, grant and convey that Borrower's interest in the Property to Lender under the terms of this Mortgage, (b) is not personally liable under the Credit Agreement or under this Mortgage, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations or amendments with regard to the terms of this Mortgage or the Credit Agreement, without that Borrower's consent and without releasing that Borrower or modifying this Mortgage as to that Borrower's interest in the Property.

12. **Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Mortgage shall be given by delivering it or by mailing such notice by first class mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by first class mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Mortgage shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

13. **Governing Law; Severability.** The state and local laws applicable to this Mortgage shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of Federal law to this Mortgage. In the event that any provision or clause of this Mortgage or the Credit Agreement conflicts with applicable law, such conflict shall not affect other provisions of this Mortgage or the Credit Agreement which can be given effect without the conflicting provision, and to this end the provisions of this Mortgage and the Credit Agreement are declared to be severable. As used herein, "costs," "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

14. **Prior Mortgage or Deed of Trust; Modification; Future Advance.** Borrower shall not enter into any agreement with the holder of any mortgage, deed of trust or other security agreement which has priority over this Mortgage by which that security agreement is modified, amended, extended, or renewed, without the prior written consent of the Lender. Borrower shall neither request nor accept any future advance under a prior mortgage, deed of trust, or other security agreement without the prior written consent of Lender.

15. **Borrower's Copy.** Borrower shall be furnished a copy of the Credit Agreement and of this Mortgage at the time of execution or after recordation hereof.

16. **Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower may enter into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

17. **Waiver of Homestead Exemption.** To the extent permitted by law, Borrower hereby waives the benefit of the homestead exemption as to all sums secured by this Mortgage.

18. **Waiver of Statutes of Limitation.** Borrower hereby waives, to the full extent permitted by law, statutes of limitation as a defense to any demand or obligation secured by this Mortgage.

19. **Merger.** There shall be no merger of the interest or estate created by this Mortgage with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

EIL93B-e

**20. Notice of Transfer of the Property; Advances after Transfer.** Borrower shall give notice to Lender, as provided in paragraph 12 hereof, prior to any sale or transfer of all or part of the Property or any rights in the Property. Any person to whom all or part of the Property or any right in the Property is sold or transferred also shall be obligated to give notice to Lender, as provided in paragraph 12 hereof, promptly after such transfer.

Even if Borrower transfers the Property, Borrower will continue to be obligated under the Credit Agreement and this Mortgage unless Lender releases Borrower in writing. As a condition to Lender's consent to any proposed transfer or as a condition to the release of Borrower, Lender may require that the person to whom the Property is transferred sign an assumption agreement satisfactory to Lender and Lender may impose an assumption fee. The assumption agreement will not entitle the person signing it to receive advances under the Credit Agreement.

**21. Transfer of the Property.** Subject to applicable law, Lender shall have the right to accelerate, that is, to demand immediate payment in full of all sums secured by this Mortgage or Deed of Trust, if Borrower, without the written consent of Lender, sells or transfers all or part of the Property or any rights in the Property.

If Lender exercises the option to accelerate, Lender shall give Borrower notice of acceleration in accordance with paragraph 12 hereof. The notice shall provide a period of not less than 30 days from the date of the notice within which Borrower may pay the sums declared due. If Borrower fails to pay those sums prior to the expiration of such period, Lender may, without further notice or demand on Borrower, invoke any remedies permitted by paragraph 22 hereof.

**22. Default, Termination and Acceleration; Remedies.** Each of the following events shall constitute an event of default ("event of default") under this Mortgage: (1) Borrower commits fraud or makes a material misrepresentation in connection with this Mortgage or the Credit Agreement; (2) Borrower does not meet the repayment terms of the Credit Agreement; or (3) Borrower's action or inaction adversely affects the Lender's rights in the Property secured by this Mortgage. If an event of default occurs, then prior to exercising any right or remedy provided for in this Mortgage and prior to acceleration, Lender shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the event of default; (2) the action required to cure such event of default; (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such event of default must be cured; and (4) that failure to cure such event of default on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage, foreclosure by judicial proceeding, and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the nonexistence of an event of default or any other defense of Borrower to acceleration and foreclosure. If the event of default is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may foreclose this Mortgage by judicial proceeding. Lender shall be entitled to collect in such proceeding all expenses of foreclosure, including, but not limited to, reasonable attorney's fees and costs of documentary evidence, abstracts and title reports.

**23. Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Mortgage due to Borrower's default, Borrower shall have the right to have any proceedings begun by Lender to enforce this Mortgage discontinued at any time prior to entry of a judgment enforcing this Mortgage if: (a) Borrower pays Lender all sums which would be then due under this Mortgage and the Credit Agreement had no acceleration occurred; (b) Borrower cures all events of default; (c) Borrower pays all reasonable expenses incurred by Lender in enforcing the covenants and agreements of Borrower contained in this Mortgage, and in enforcing Lender's remedies as provided in paragraph 22 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Mortgage, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Mortgage shall continue unimpaired. Upon such payment and cure by Borrower, this Mortgage and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

**24. Assignment of Rents; Appointment of Receiver.** As additional security hereunder, borrower hereby assigns to lender the rents of the property, provided that borrower shall, prior to acceleration under paragraph 22 hereof or abandonment of the property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 22 hereof or abandonment of the property, lender shall be entitled to have a receiver appointed by a court to enter upon, take possession of and manage the property and to collect the rents of the property including those past due. All rents collected by the receiver shall be applied first to payment of the costs of management of the property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys fees, and then to the sums secured by this mortgage. The receiver shall be liable to account only for those rents actually received.

**25. Release.** This Mortgage secures a revolving line of credit and advances may be made, repaid, and remade from time to time, under the terms of the Credit Agreement. Lender shall discharge this Mortgage when Borrower has (1) paid all sums secured by this Mortgage and (2) has requested (a) that the line of credit be cancelled or (b) that the line of credit be reduced below the amount for which a security interest in real property may be required by Lender. Lender shall release this Mortgage without charge to Borrower.

EIL93B-e

_____ REQUEST FOR NOTICE OF DEFAULT AND FORECLOSURE _____
UNDER SUPERIOR MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Mortgage to give Notice to Lender, at Lender's address set forth on page one of this Mortgage, of any default under the superior encumbrance and of any sale or other foreclosure action.

IN WITNESS WHEREOF, Borrower has executed this Mortgage.

X _____     09/17/2015
                                        (Seal)
DEBBIE L MIZE
                    Borrower
X _____
                                        (Seal)
                    Borrower
X _____
                                        (Seal)
                    Borrower
X _____
                                        (Seal)
                    Borrower

STATE OF ILLINOIS, _____Lake_____ County ss:

I, ___Robert K Smolik_____ a Notary Public in and for said county and state, do hereby certify that DEBBIE L MIZE _____

_____ personally known to me to be the same person(s) whose name(s) _____ subscribed to the foregoing instrument, appeared before me this day in person, and acknowledged that _____ signed and delivered the said instrument as _____ free voluntary act, for the uses and purposes therein set forth.

Given under my hand and official seal, this __17th__ day of _September_, 2015.

My Commission expires: _____ _Robert K Smolik_
                                      Signature of Notary Public

                                      Robert K Smolik
                                      Name of Notary Public

OFFICIAL SEAL
ROBERT K SMOLIK
Notary Public - State of Illinois
My Commission Expires Sep 16, 2017

EIL93B-e





HOME EQUITY ADDENDUM

This Addendum is incorporated into and becomes a part of your LOANLINER® Credit Agreement and Truth in Lending Disclosure.

| OPENING DATE | MATURITY DATE | CREDIT LIMIT | ACCOUNT NUMBER |
|---|---|---|---|
| 09/17/2015 | 09/25/2030 | $15,000.00 | |

**BORROWER NAME AND ADDRESS**

DEBBIE L MIZE
1642 JOPLIN CIRCLE
ELK GROVE VILLAGE, IL 60007

**ADDRESS OF PROPERTY SECURING ACCOUNT**

1642 JOPLIN CIRCLE
Elk Grove Village, IL 60007

☒ Plan A

☐ Plan B

| INDEX RATE | MARGIN ADDED TO INDEX | ANNUAL PERCENTAGE RATE | DAILY PERIODIC RATE |
|---|---|---|---|
| 3.25 % | 0.75 % | 4.00 % | 0.0109643 % |

**SCHEDULE OF CLOSING COSTS:**

| DESCRIPTION | AMOUNT | DESCRIPTION | AMOUNT |
|---|---|---|---|
| | $ | | $ |
| | $ | | $ |
| | $ | | $ |
| | $ | | $ |
| | $ | | $ |

**PAYMENT INFORMATION:**

PLAN A: You can obtain credit advances for 10 years. This period is called the "draw period." At our option, we may renew or extend the draw period. After the draw period ends the repayment period will begin. The length of the repayment period will depend on the balance at the time of the last advance you obtain before the draw period ends. You will be required to make monthly payments during both the draw and repayment periods. At the time you obtain a credit advance a payoff period of 180 monthly payments will be used to calculate your payment.

The payoff period will always be the shorter of the payoff period for your outstanding balance or the time remaining to the maturity date. Your payment will be set to repay the balance after the advance, at the current annual percentage rate, within the payoff period. Your payment will be rounded up to the nearest dollar. Your payment will remain the same unless you obtain another credit advance. Your payment may also change if the annual percentage rate increases or decreases. Each time the annual percentage rate changes, we will adjust your payment to repay the balance within the original payoff period. Your payment will include any amounts past due and any amount by which you have exceeded your credit limit, and all other charges. Your payment will never be less than the smaller of $100.00, or the full amount that you owe.

PLAN B: You can obtain credit advances for 10 years. This period is called the "draw period." At our option, we may renew or extend the draw period. After the draw period ends the repayment period will begin. The length of the repayment period will be 60 months. You will be required to make monthly payments during both the draw and repayment periods. During the draw period your monthly payment will equal the finance charges (interest) that accrued on the outstanding balance during the preceding month. If the interest rate increases you will have to make a higher payment. At the

beginning of the repayment period we will recalculate your payment. Your payment will be set to repay the balance at the current annual percentage rate over 60 months. Your payment will be rounded up to the nearest dollar. Each time the annual percentage rate changes, we will adjust your payment to repay the balance within the number of months remaining in the 60 month period. Your payment during the draw and repayment periods will include any amounts past due and any amount by which you have exceeded your credit limit, and all other charges. During the repayment period, your payment will never be less than the smaller of $100.00, or the full amount that you owe.

TRANSACTION REQUIREMENTS: The minimum credit advance that you can receive is $5,000.00 for the first advance and $500.00 for each subsequent advance.

PERIODIC RATE AND CORRESPONDING ANNUAL PERCENTAGE RATE: We will determine the periodic rate and the corresponding annual percentage rate as follows. We start with an independent index, (the "Index"), which is the Wall Street Journal Prime Rate. When a range of rates has been published, the highest rate will be used. We will use the most recent index value available to us as of 45 days before any annual percentage rate adjustment. To determine the periodic rate that will apply to your account, we add a margin, as disclosed above, to the value of the Index. Then we divide this sum by the number of days in a year (365). To obtain the annual percentage rate we will multiply the periodic rate by the number of days in a year (365). This result is the annual percentage rate.

The annual percentage rate can change quarterly on the first day of January, April, July and October. There is no limit on the amount by which the annual percentage rate can change during any one year period. The

©CUNA MUTUAL GROUP, 1992, 1999 ALL RIGHTS RESERVED

EAD003 SPECIAL 302510 (C302510AD) 11/14/2011

maximum **ANNUAL PERCENTAGE RATE** that can apply is 18.0% or the maximum permitted by law, whichever is less. However, under no circumstances will your **ANNUAL PERCENTAGE RATE** go below 3.25% at any time during the term of the plan.

**OTHER CHARGES:**
Late Charges: If your payment is more than 5 days late we may charge you $20.00.

**COLLECTION COSTS:**
For Borrowers in IL: You promise to pay, subject to applicable law, all costs of collecting what you owe under this agreement or realizing on security including court costs, collection agency fees and reasonable attorney fees. We may enter into a contingent or hourly fee arrangement with an attorney or collection agency and you agree that such an agreement is reasonable. This provision also applies to bankruptcy, appeals or postjudgment proceedings.

For Borrowers in WI: Unless this agreement is subject to the Wisconsin Consumer Act you promise to pay all costs of collecting the amount you owe under this agreement. This includes but is not limited to reasonable attorney fees and court costs as well as legal expenses for any bankruptcy, appeals or postjudgment proceedings.

For Borrowers in AZ, CA, FL, NY, PA: You promise to pay, subject to any limits under applicable law, all costs of collecting the amount you owe under this agreement. This includes but is not limited to reasonable attorney fees and court costs as well as legal expenses for any bankruptcy, appeals or postjudgment proceedings.

For Borrowers in GA: You promise to pay, subject to any limits under applicable law, all costs of collecting the amount you owe under this agreement. If collected by or through an attorney, you promise to pay attorney fees not to exceed 15% of the principal and interest owing as well as legal expenses for any bankruptcy, appeals or postjudgment proceedings. If not prohibited by applicable law you will also pay any court costs.

The following notice is required by California law: No Lender shall require a borrower, as a condition of receiving or maintaining a loan secured by real property, to provide hazard insurance coverage against risks to the improvements on that real property in an amount exceeding the replacement value of the improvements on the property.

**SHAREDRAFT ACCESS: SHAREDRAFT ACCESS IS NOT ALLOWED IN TEXAS.**
We may authorize you to obtain credit advances by writing sharedrafts on your home equity account. We reserve the right not to honor a sharedraft in the following circumstances:
(a) Your Credit Limit has been or would be exceeded by paying the sharedraft.
(b) Your sharedraft is post-dated. If a post-dated sharedraft is paid and as a result any other check is returned or not paid, we are not responsible.
(c) Your sharedrafts have been reported lost or stolen. You should notify us at once if your sharedrafts are lost or stolen.
(d) Your sharedraft is not signed by an "Authorized Signer", which means a person who signed this Agreement, or has signed a separate signature card for the account.

(e) Your account has been terminated or suspended as provided in this Agreement.
(f) The amount of your sharedraft is less than the minimum amount required by this Agreement or you are in violation of any other transaction requirement.
If we pay any sharedraft under these conditions, you must repay us for the amount of the sharedraft and any charges permitted by law. The sharedraft itself will be evidence of your debt to us together with this Agreement. Our liability, if any, for wrongful dishonor of a sharedraft is limited to your actual damages. Dishonor for any reason as provided in the Agreement is not wrongful dishonor. We may not return the sharedrafts along with your periodic statements; however, your use of a sharedraft will be reflected on your periodic statement as a credit advance. We do not "certify" sharedrafts drawn on your account.

**ADDITIONAL PROVISIONS FOR TEXAS BORROWERS:** You and the credit union will sign a written acknowledgement as to the fair market value of the Property described in the Deed of Trust, on the date this Plan is established.

You shall be liable for the indebtedness under this Plan only to the extent of the Property described in the Deed of Trust that secures the payment of this Plan. If you default in the payment of such indebtedness or in your performance under this Plan or the Deed of Trust, any judicial proceedings brought by us against you shall be limited to enforcement and foreclosure of the lien created by the Deed of Trust. If there is foreclosure of such lien, no judgement for any deficiency shall be sought or obtained by us against you. Notwithstanding the foregoing limitation of liability, you shall be fully and personally liable if you or your spouse committed fraud in or in connection with this Plan or any instrument governing, securing or pertaining to the payment hereof.

Except as may be otherwise provided in this Plan or the Deed of Trust securing this Plan, you waive your rights to require us to do certain things. Those things are (A) to give notice of intent to accelerate the maturity date of the outstanding principal balance under this Plan (known as "notice of intent to accelerate"); (B) to demand payment of amounts due (known as "presentment"); (C) to give notice that amounts due have not been paid (known as "notice of dishonor"); (D) to obtain an official certification of nonpayment (known as a "protest"). Anyone else who agrees to keep the promises made under this Plan, or who agrees to make payments to us if you fail to keep your promises under this Plan, or who signs this Plan to transfer it to someone else also waives these rights. These persons are known as "guarantors, sureties and endorsers."

You and your spouse may within three days after closing rescind this Plan without penalty or charge.

Notwithstanding what is provided in Section 13(c) of this Plan, we may not unilaterally change the terms of this Plan.

**TRANSACTION REQUIREMENT FOR TEXAS BORROWERS:** The minimum credit advance that you can receive is $4000.00.

**COLLECTION COSTS FOR TEXAS BORROWERS:** To the extent permitted by law, you promise to pay all reasonable costs and expenses we incur in collecting the amount you owe under this Plan. This includes but is not limited to reasonable attorney fees.

©CUNA MUTUAL GROUP, 1992, 1999 ALL RIGHTS RESERVED

Debbie L. Hize
1642 Joplin Circle
Elk Grove Village  IL  60007

---------------------------------- Transaction History Account Number          ----------------------------------
10-01-2017 to 10-23-2018

| Description | Eff Date | Post Date | Due Date | Balance Type | Amount | Running Bal |
|---|---|---|---|---|---|---|
| Regular Payment Tran:LP  @ATHT | 10-05-2017 | 10-05-2017 | | Late Charge Balance (Excess) | -20 | |
| | | | | Note Interest (Excess) | -58.73 | |
| | | | | Note Balance (Excess) | -121.27 | 29871.32 |
| | | | | Total | 200 | |
| Regular Payment Internet Trans | 10-19-2017 | 10-19-2017 | 10-25-2017 | Note Interest | -54.42 | |
| | | | | Note Balance | -184.58 | 29686.74 |
| | | | | Total | 239 | |
| Regular Payment November payme | 11-16-2017 | 11-16-2017 | 11-25-2017 | Note Interest | -108.17 | |
| | | | | Note Balance | -130.83 | 29555.91 |
| | | | | Total | 239 | |
| Regular Payment Early payment | 12-14-2017 | 12-14-2017 | 12-25-2017 | Note Interest | -107.69 | |
| | | | | Note Balance | -131.31 | 29424.60 |
| | | | | Total | 239 | |
| Principal Disbursement Interne | 12-20-2017 | 12-20-2017 | | Note Balance | 500 | 29924.60 |
| Regular Payment Transfer from | 01-25-2018 | 01-25-2018 | 01-25-2018 | Note Interest | -163.17 | |
| | | | | Note Balance | -83.83 | 29840 77 |
| | | | | Total | 247 | |
| Regular Payment Internet Trans | 02-22-2018 | 02-22-2018 | 02-25-2018 | Note Interest | -108.73 | |
| | | | | Note Balance | -138.27 | 29702.50 |
| | | | | Total | 247 | |
| Regular Payment Internet Trans | 03-22-2018 | 03-22-2018 | 03-25-2018 | Note Interest | -108.23 | |
| | | | | Note Balance | -138.77 | 29563.73 |
| | | | | Total | 247 | |
| Regular Payment Internet Trans | 04-21-2018 | 04-21-2018 | 04-25-2018 | Note Interest | -119.47 | |
| | | | | Note Balance | -127.53 | 29436.20 |
| | | | | Total | 247 | |
| Principal Disbursement Interne | 04-24-2018 | 04-24-2018 | | Note Balance | 500 | 29936.20 |
| Regular Payment Internet Trans | 05-17-2018 | 05-17-2018 | 05-25-2018 | Note Interest | -106.41 | |
| | | | | Note Balance | -148.59 | 29787.61 |
| | | | | Total | 255 | |
| Regular Payment Internet Trans | 06-15-2018 | 06-15-2018 | 06-25-2018 | Note Interest | -118.34 | |
| | | | | Note Balance | -136.66 | 29650 95 |
| | | | | Total | 255 | |
| Regular Payment Transfer from | 07-26-2018 | 07-26-2018 | 07-25-2018 | Note Interest | -171.61 | |

Debbie L. Nize
1642 Joplin Circle
Elk Grove Village  IL  60007

---------------------------------- Transaction History Account Number .    ------------------------------------
10-01-2017 to 10-23-2018

| Description | Eff Date | Post Date | Due Date | Balance Type | Amount | Running Bal |
|---|---|---|---|---|---|---|
| | | | | Note Balance | -83.39 | 29567.56 |
| | | | | Total | 255 | |
| Regular Payment Internet Trans | 07-26-2018 | 07-26-2018 | | Note Balance (Excess) | -70 | 29497.56 |
| Principal Disbursement Interne | 07-26-2018 | 07-26-2018 | | Note Balance | 500 | 29997.56 |
| Regular Payment Internet Trans | 08-25-2018 | 08-25-2018 | 08-25-2018 | Note Interest | -129.44 | |
| | | | | Note Balance | -133.56 | 29864 |
| | | | | Total | 263 | |
| Regular Payment Internet Trans | 09-20-2018 | 09-20-2018 | 09-25-2018 | Note Interest | -111.68 | |
| | | | | Note Balance | -151.32 | 29712.68 |
| | | | | Total | 263 | |
| Principal Receipt Internet Tra | 09-25-2018 | 09-25-2018 | | Note Balance | -220 | 29492.68 |
| Principal Disbursement Transfe | 09-25-2018 | 09-25-2018 | | Note Balance | 500 | 29992.68 |

| Fill in this information to identify your case: | | | |
|---|---|---|---|
| Debtor 1 | **Debbie L. Mize** | | |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse, if filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | | **NORTHERN DISTRICT OF ILLINOIS** | |
| Case number: | **18-27584** | | |
| (If known) | | | |

■ Check if this is an amended plan, and list below the sections of the plan that have been changed.
**2.1, 2.5, 3.1, 5.1, 8.1**

Official Form 113
## Chapter 13 Plan

12/17

**Notices**

**To Debtor(s):**   This form sets out options that may be appropriate in some cases, but the presence of an option on the form does not indicate that the option is appropriate in your circumstances or that it is permissible in your judicial district. Plans that do not comply with local rules and judicial rulings may not be confirmable.

*In the following notice to creditors, you must check each box that applies*

**To Creditors:**   Your rights may be affected by this plan. Your claim may be reduced, modified, or eliminated.
You should read this plan carefully and discuss it with your attorney if you have one in this bankruptcy case. If you do not have an attorney, you may wish to consult one.

If you oppose the plan's treatment of your claim or any provision of this plan, you or your attorney must file an objection to confirmation at least 7 days before the date set for the hearing on confirmation, unless otherwise ordered by the Bankruptcy Court. The Bankruptcy Court may confirm this plan without further notice if no objection to confirmation is filed. See Bankruptcy Rule 3015. In addition, you may need to file a timely proof of claim in order to be paid under any plan.

The following matters may be of particular importance. *Debtors must check one box on each line to state whether or not the plan includes each of the following items. If an item is checked as "Not Included" or if both boxes are checked, the provision will be ineffective if set out later in the plan.*

| 1.1 | A limit on the amount of a secured claim, set out in Section 3.2, which may result in a partial payment or no payment at all to the secured creditor | ☐ Included | ■ Not Included |
|---|---|---|---|
| 1.2 | Avoidance of a judicial lien or nonpossessory, nonpurchase-money security interest, set out in Section 3.4. | ☐ Included | ■ Not Included |
| 1.3 | Nonstandard provisions, set out in Part 8. | ■ Included | ☐ Not Included |

**Plan Payments and Length of Plan**

**2.1**   Debtor(s) will make regular payments to the trustee as follows:

**$500** per **Month** for **60** months

*Insert additional lines if needed.*

If fewer than 60 months of payments are specified, additional monthly payments will be made to the extent necessary to make the payments to creditors specified in this plan.

**2.2**   Regular payments to the trustee will be made from future income in the following manner.

*Check all that apply:*
☐   Debtor(s) will make payments pursuant to a payroll deduction order.
■   Debtor(s) will make payments directly to the trustee.
☐   Other (specify method of payment):

**2.3 Income tax refunds.**
*Check one.*
■   Debtor(s) will retain any income tax refunds received during the plan term.

APPENDIX D                                    Chapter 13 Plan



| Debtor | **Debbie L. Mize** | | Case number | **18-27584** |

☐ Debtor(s) will supply the trustee with a copy of each income tax return filed during the plan term within 14 days of filing the return and will turn over to the trustee all income tax refunds received during the plan term.

☐ Debtor(s) will treat income refunds as follows:

## 2.4 Additional payments.
*Check one.*
■ **None.** *If "None" is checked, the rest of § 2.4 need not be completed or reproduced.*

**2.5** The total amount of estimated payments to the trustee provided for in §§ 2.1 and 2.4 is $**30,000.00**.

| Part 3: | **Treatment of Secured Claims** |

**3.1** Maintenance of payments and cure of default, if any.

*Check one.*
☐ **None.** *If "None" is checked, the rest of § 3.1 need not be completed or reproduced.*
■ The debtor(s) will maintain the current contractual installment payments on the secured claims listed below, with any changes required by the applicable contract and noticed in conformity with any applicable rules. These payments will be disbursed either by the trustee or directly by the debtor(s), as specified below. Any existing arrearage on a listed claim will be paid in full through disbursements by the trustee, with interest, if any, at the rate stated. Unless otherwise ordered by the court, the amounts listed on a proof of claim filed before the filing deadline under Bankruptcy Rule 3002(c) control over any contrary amounts listed below as to the current installment payment and arrearage. In the absence of a contrary timely filed proof of claim, the amounts stated below are controlling. If relief from the automatic stay is ordered as to any item of collateral listed in this paragraph, then, unless otherwise ordered by the court, all payments under this paragraph as to that collateral will cease, and all secured claims based on that collateral will no longer be treated by the plan. The final column includes only payments disbursed by the trustee rather than by the debtor(s).

| Name of Creditor | Collateral | Current installment payment (including escrow) | Amount of arrearage (if any) | Interest rate on arrearage (if applicable) | Monthly payment on arrearage | Estimated total payments by trustee |
|---|---|---|---|---|---|---|
| **Andigo Credit Union** | 1642 Joplin Circle Elk Grove Village, IL 60007 Cook County | $265.00 Disbursed by: ☐ Trustee ■ Debtor(s) | Prepetition: $0.00 | 0.00% | $0.00 | $0.00 |
| **Ocwen Loan Servicing/US Bank** | 1642 Joplin Circle Elk Grove Village, IL 60007 Cook County | $1,674.53 Disbursed by: ☐ Trustee ■ Debtor(s) | Prepetition: $8,565.06 | 0.00% | $317.22 | $8,565.06 |

*Insert additional claims as needed.*

**3.2** Request for valuation of security, payment of fully secured claims, and modification of undersecured claims. *Check one.*

■ **None.** *If "None" is checked, the rest of § 3.2 need not be completed or reproduced.*

**3.3** Secured claims excluded from 11 U.S.C. § 506.

*Check one.*
■ **None.** *If "None" is checked, the rest of § 3.3 need not be completed or reproduced.*

**3.4** Lien avoidance.

*Check one.*

| Debtor | Debbie L. Mize | | Case number | 18-27584 |

■ **None.** *If "None" is checked, the rest of § 3.4 need not be completed or reproduced.*

**3.5 Surrender of collateral.**

*Check one.*
■ **None.** If "None" is checked, the rest of § 3.5 need not be completed or reproduced.

**Part 4:  Treatment of Fees and Priority Claims**

**4.1 General**
Trustee's fees and all allowed priority claims, including domestic support obligations other than those treated in § 4.5, will be paid in full without postpetition interest.

**4.2 Trustee's fees**
Trustee's fees are governed by statute and may change during the course of the case but are estimated to be **6.00**% of plan payments; and during the plan term, they are estimated to total **$1,800.00**.

**4.3 Attorney's fees.**
The balance of the fees owed to the attorney for the debtor(s) is estimated to be **$4,000.00**.

**4.4 Priority claims other than attorney's fees and those treated in § 4.5.**

*Check one.*
■ **None.** *If "None" is checked, the rest of § 4.4 need not be completed or reproduced.*

**4.5 Domestic support obligations assigned or owed to a governmental unit and paid less than full amount.**

*Check one.*
■ **None.** *If "None" is checked, the rest of § 4.5 need not be completed or reproduced.*

**Part 5:  Treatment of Nonpriority Unsecured Claims**

**5.1 Nonpriority unsecured claims not separately classified.**

Allowed nonpriority unsecured claims that are not separately classified will be paid, pro rata. If more than one option is checked, the option providing the largest payment will be effective. *Check all that apply.*
☐ The sum of $ .
■ **100.00** % of the total amount of these claims, an estimated payment of $ **13,594.46** .
■ The funds remaining after disbursements have been made to all other creditors provided for in this plan.

If the estate of the debtor(s) were liquidated under chapter 7, nonpriority unsecured claims would be paid approximately $**56,109.49**. Regardless of the options checked above, payments on allowed nonpriority unsecured claims will be made in at least this amount.

**5.2 Maintenance of payments and cure of any default on nonpriority unsecured claims.** *Check one.*

■ **None.** *If "None" is checked, the rest of § 5.2 need not be completed or reproduced.*

**5.3 Other separately classified nonpriority unsecured claims.** *Check one.*

■ **None.** *If "None" is checked, the rest of § 5.3 need not be completed or reproduced.*

**Part 6:  Executory Contracts and Unexpired Leases**

**6.1** The executory contracts and unexpired leases listed below are assumed and will be treated as specified. All other executory contracts and unexpired leases are rejected. *Check one.*

| Debtor | **Debbie L. Mize** | Case number | **18-27584** |

■ **None.** *If "None" is checked, the rest of § 6.1 need not be completed or reproduced.*

---

**Part 7:**    **Vesting of Property of the Estate**

**7.1**    **Property of the estate will vest in the debtor(s) upon**
*Check the appliable box:*
☐    plan confirmation.
■    entry of discharge.
☐    other: _____

**Part 8:**    **Nonstandard Plan Provisions**

**8.1**    **Check "None" or List Nonstandard Plan Provisions**
☐    **None.** *If "None" is checked, the rest of Part 8 need not be completed or reproduced.*

*Under Bankruptcy Rule 3015(c), nonstandard provisions must be set forth below. A nonstandard provision is a provision not otherwise included in the Official Form or deviating from it. Nonstandard provisions set out elsewhere in this plan are ineffective.*

*The following plan provisions will be effective only if there is a check in the box "Included" in § 1.3.*
1. Unsecured creditors shall receive interest of 4.2%.
_____
_____

**Part 9:**    **Signature(s):**

**9.1**    **Signatures of Debtor(s) and Debtor(s)' Attorney**
*If the Debtor(s) do not have an attorney, the Debtor(s) must sign below, otherwise the Debtor(s) signatures are optional. The attorney for Debtor(s), if any, must sign below.*

| *X*    **/s/ Debbie L. Mize** | *X*    _____ |
|---|---|
| **Debbie L. Mize** | Signature of Debtor 2 |
| Signature of Debtor 1 | |

Executed on    **January  3, 2019**          Executed on    _____

*X*    **/s/ David M. Siegel**          Date    **January  3, 2019**
**David M. Siegel**
Signature of Attorney for Debtor(s)

**By filing this document, the Debtor(s), if not represented by an attorney, or the Attorney for Debtor(s) also certify(ies) that the wording and order of the provisions in this Chapter 13 plan are identical to those contained in Official Form 113, other than any nonstandard provisions included in Part 8.**

Debtor    **Debbie L. Mize**                                    Case number    **18-27584**

## Exhibit: Total Amount of Estimated Trustee Payments

The following are the estimated payments that the plan requires the trustee to disburse. If there is any difference between the amounts set out below and the actual plan terms, the plan terms control.

| | | |
|---|---|---:|
| a. | **Maintenance and cure payments on secured claims** *(Part 3, Section 3.1 total)* | **$8,565.06** |
| b. | **Modified secured claims** *(Part 3, Section 3.2 total)* | **$0.00** |
| c. | **Secured claims excluded from 11 U.S.C. § 506** *(Part 3, Section 3.3 total)* | **$0.00** |
| d. | **Judicial liens or security interests partially avoided** *(Part 3, Section 3.4 total)* | **$0.00** |
| e. | **Fees and priority claims** *(Part 4 total)* | **$5,800.00** |
| f. | **Nonpriority unsecured claims** *(Part 5, Section 5.1, highest stated amount)* | **$13,594.46** |
| g. | **Maintenance and cure payments on unsecured claims** *(Part 5, Section 5.2 total)* | **$0.00** |
| h. | **Separately classified unsecured claims** *(Part 5, Section 5.3 total)* | **$0.00** |
| i. | **Trustee payments on executory contracts and unexpired leases** *(Part 6, Section 6.1 total)* | **$0.00** |
| j. | **Nonstandard payments** *(Part 8, total)*                                    + | **$0.00** |

**Total of lines a through j**                                                    **$27,959.52**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF ILLINOIS

Eastern Division

| | | |
|---|---|---|
| In Re: | ) | BK No.:    18-27584 |
| Debbie L. Mize | ) | |
| | ) | Chapter: 13 |
| | ) | Honorable Deborah L. Thorne |
| | ) | |
| | ) | |
| Debtor(s) | ) | |

### Order Confirming Plan

The plan under Chapter 13 of the Bankruptcy code, filed as docket No. 33, having been found by the Court to comply with the provisions of the 11 U.S.C. section 1325, THE PLAN IS HEREBY CONFIRMED.

All property of the estate, as specified by the 11 U.S.C. section 541 and 1306, will continue to be property of the estate following confirmation, unless (1) the plan provides for surrender of the property, or (2) the property is sold pursuant to the plan or court order.

Enter:    *Deborah L. Thorne*

Honorable Deborah L. Thorne

United States Bankruptcy Judge

Dated:  January 16, 2019



Debbie L Mize
1642 Joplin Circle
Elk Grove Village  IL  60007

Transaction History Account Number
10 01-2018 to 01 16 2020

| Description | Eff Date | Post Date | Due Date | Balance Type | Amount | Running Bal |
|---|---|---|---|---|---|---|
| Regular Payment A | 10 20 2018 | 10 20 2018 | 10 25 2018 | Note Interest | 133 12 | |
| | | | | Note Balance | 131 88 | 29860 80 |
| | | | | Total | 265 00 | |
| Regular Payment Internet Trans | 11 15-2018 | 11 15 2018 | 11 25 2018 | Note Interest | -116 98 | |
| | | | | Note Balance | -152 02 | 29708 78 |
| | | | | Total | 269 00 | |
| Regular Payment Internet Trans | 12 16 2018 | 12 16-2018 | 12 25 2018 | Note Interest | 138 78 | |
| | | | | Note Balance | 130 22 | 29578 56 |
| | | | | Total | 269 00 | |
| Regular Payment Internet Trans | 01 10 2019 | 01 10 2019 | 01 25 2019 | Note Interest | 113 25 | |
| | | | | Note Balance | 155 75 | 29422 81 |
| | | | | Total | 269 00 | |
| Principal Disbursement Interne | 01 12-2019 | 01 12 2019 | | Note Balance | 500 00 | 29922 81 |
| Regular Payment Internet Trans | 02-21 2019 | 02 21-2019 | 02 25 2019 | Note Interest | -197 83 | |
| | | | | Note Balance | 79 17 | 29843 64 |
| | | | | Total | 277 00 | |
| Regular Payment Internet Trans | 02 23-2019 | 02 23 2019 | | Note Balance (Excess) | 350 00 | 29493 64 |
| Principal Disbursement TRANSFE | 02-23 2019 | 02 23-2019 | | Note Balance | 500 00 | 29993 64 |
| Regular Payment PAYMENT FROM 1 | 02 27 2019 | 02-27 2019 | | Note Balance (Excess) | 1 00 | 29992 64 |
| Regular Payment Internet Trans | 03 21 2019 | 03 21 2019 | 03 25-2019 | Note Interest | 132 25 | |
| | | | | Note Balance | 146 75 | 29845 89 |
| | | | | Total | 279 00 | |
| Regular Payment Internet Trans | 03 24 2019 | 03 24 2019 | | Note Balance (Excess) | 200 00 | 29645 89 |
| Payment Reversal | | 03-24 2019 | 03 28 2019 | Note Balance (Excess) | 200 00 | 29845 89 |
| Regular Payment Internet Trans | 04 19 2019 | 04 19 2019 | 04 25 2019 | Note Interest | 140 03 | |
| | | | | Note Balance | -138 97 | 29706 92 |
| | | | | Total | 279 00 | |
| Regular Payment Internet Trans | 05 16 2019 | 05 16 2019 | 05 25 2019 | Note Interest | 131 85 | |
| | | | | Note Balance | 151 15 | 29555 77 |
| | | | | Total | 283 00 | |
| Regular Payment Internet Trans | 05 24 2019 | 05 24 2019 | | Note Balance (Excess) | 60 00 | 29495 77 |


EXHIBIT
D
ALL-STATE LEGAL®

Debbie L Mize
1642 Joplin Circle
Elk Grove Village  IL  60007

. .  .                    .        Transaction History Account Number                . .  ..
                                   10 01 2018 to 01-16-2020

| Description | Eff Date | Post Date | Due Date | Balance Type | Amount | Running Bal |
|---|---|---|---|---|---|---|
| Payment Reversal | 05 24 2019 | 05 28 2019 | | Note Balance (Excess) | 60 00 | 29555 77 |
| Regular Payment Internet Trans | 06 27 2019 | 06 27 2019 | 06 25 2019 | Note Interest | 204 05 | |
| | | | | Note Balance | 78 95 | 29476 82 |
| | | | | Total | 283 00 | |
| Late Charge Assessment | 07 30 2019 | 07 30 2019 | | Late Charge Balance | 20 00 | |
| Late Charge Assessment | 08 30 2019 | 08 30 2019 | | Late Charge Balance | 20 00 | |
| Late Charge Assessment | 09 30-2019 | 09 30 2019 | | Late Charge Balance | 20 00 | |
| Non Accrual Int Receipt | 10-23 2019 | 10 23 2019 | | Non Accrual Interest | 571 97 | |
| Non-Accrual Int Receipt | 10 24 2019 | 10 24 2019 | | Non-Accrual Interest | 4 65 | |
| Non Accrual Int Receipt | 10 25 2019 | 10 25 2019 | | Non Accrual Interest | 4 64 | |
| Non Accrual Int Receipt | 10 26-2019 | 10 26 2019 | | Non Accrual Interest | 4 64 | |
| Non-Accrual Int Receipt | 10 27 2019 | 10 27-2019 | | Non Accrual Interest | 4 65 | |
| Non Accrual Int Receipt | 10 28 2019 | 10-28 2019 | | Non Accrual Interest | 4 64 | |
| Non Accrual Int Receipt | 10 29 2019 | 10 29 2019 | | Non Accrual Interest | 4 64 | |
| Late Charge Assessment | 10-30 2019 | 10 30-2019 | | Late Charge Balance | 20 00 | |
| Non Accrual Int Receipt | 10 30 2019 | 10 30-2019 | | Non Accrual Interest | 4 65 | |
| Non Accrual Int Receipt | 10 31 2019 | 10-31 2019 | | Non-Accrual Interest | 4 64 | |
| Non Accrual Int Receipt | 11 01 2019 | 11 01 2019 | | Non Accrual Interest | 4 64 | |
| Non Accrual Int Receipt | 11 02 2019 | 11 02 2019 | | Non Accrual Interest | 4 65 | |
| Non Accrual Int Receipt | 11 03 2019 | 11 03 2019 | | Non Accrual Interest | 4 64 | |
| Non Accrual Int Receipt | 11 04 2019 | 11 04 2019 | | Non Accrual Interest | 4 64 | |
| Non Accrual Int Receipt | 11 05 2019 | 11 05 2019 | | Non Accrual Interest | 4 65 | |
| Non Accrual Int Receipt | 11 06 2019 | 11 06 2019 | | Non Accrual Interest | 4 64 | |
| Non Accrual Int Receipt | 11 07 2019 | 11 07 2019 | | Non Accrual Interest | 4 65 | |

Debbie L  Mize
1642 Joplin Circle
Elk Grove Village  IL  60007

Transaction History Account Number
10 01 2018 to 01 16 2020

| Description | Eff Date | Post Date | Due Date | Balance Type | Amount | Running Bal |
|---|---|---|---|---|---|---|
| Non-Accrual Int Receipt | 11 08 2019 | 11 08 2019 | | Non Accrual Interest | 4 64 | |
| Non Accrual Int Receipt | 11 09 2019 | 11 09 2019 | | Non Accrual Interest | 4 64 | |
| Non Accrual Int Receipt | 11 10 2019 | 11 10 2019 | | Non Accrual Interest | 4 65 | |
| Non Accrual Int Receipt | 11 11 2019 | 11 11 2019 | | Non Accrual Interest | 4 64 | |
| Non Accrual Int Receipt | 11 12 2019 | 11 12 2019 | | Non Accrual Interest | 4 64 | |
| Non Accrual Int Receipt | 11 13 2019 | 11 13 2019 | | Non Accrual Interest | 4 65 | |
| Non Accrual Int Receipt | 11 14-2019 | 11 14-2019 | | Non-Accrual Interest | 4 64 | |
| Non Accrual Int Receipt | 11 15 2019 | 11 15 2019 | | Non Accrual Interest | 4 64 | |
| Non Accrual Int Receipt | 11 16 2019 | 11 16 2019 | | Non Accrual Interest | 4 65 | |
| Non Accrual Int Receipt | 11 17-2019 | 11 17 2019 | | Non Accrual Interest | 4 64 | |
| Non Accrual Int Receipt | 11 18 2019 | 11 18-2019 | | Non Accrual Interest | 4 64 | |
| Non Accrual Int Receipt | 11 19 2019 | 11-19 2019 | | Non Accrual Interest | 4 65 | |
| Non Accrual Int Receipt | 11 20 2019 | 11 20 2019 | | Non Accrual Interest | 4 64 | |
| Non Accrual Int Receipt | 11-21 2019 | 11 21 2019 | | Non-Accrual Interest | 4 65 | |
| Non-Accrual Int Receipt | 11 22 2019 | 11 22-2019 | | Non Accrual Interest | 4 64 | |
| Non Accrual Int Receipt | 11 23 2019 | 11-23 2019 | | Non Accrual Interest | 4 64 | |
| Non Accrual Int Receipt | 11 24 2019 | 11 24 2019 | | Non Accrual Interest | 4 65 | |
| Non Accrual Int Receipt | 11 25 2019 | 11 25 2019 | | Non Accrual Interest | 4 64 | |
| Non Accrual Int Receipt | 11 26 2019 | 11 26 2019 | | Non Accrual Interest | 4 64 | |
| Non Accrual Int Receipt | 11 27 2019 | 11 27 2019 | | Non Accrual Interest | 4 65 | |
| Non Accrual Int Receipt | 11 28 2019 | 11 28 2019 | | Non Accrual Interest | 4 64 | |
| Non Accrual Int Receipt | 11 29 2019 | 11 29 2019 | | Non Accrual Interest | 4 64 | |
| Late Charge Assessment | 11 30 2019 | 11 30 2019 | | Late Charge Balance | 20 00 | |

Debbie L Mize
1642 Joplin Circle
Elk Grove Village IL 60007

Transaction History Account Number
10 01 2018 to 01 16 2020

| Description | Eff Date | Post Date | Due Date | Balance Type | Amount | Running Bal |
|---|---|---|---|---|---|---|
| Non-Accrual Int Receipt | 11 30-2019 | 11 30-2019 | | Non Accrual Interest | 4 65 | |
| Non-Accrual Int Receipt | 12 01-2019 | 12 01 2019 | | Non Accrual Interest | 4 64 | |
| Non-Accrual Int Receipt | 12 02 2019 | 12 02 2019 | | Non Accrual Interest | 4 65 | |
| Non Accrual Int Receipt | 12 03 2019 | 12-03 2019 | | Non Accrual Interest | 4 64 | |
| Non Accrual Int Receipt | 12-04 2019 | 12 04 2019 | | Non Accrual Interest | 4 64 | |
| Non Accrual Int Receipt | 12-05 2019 | 12 05 2019 | | Non Accrual Interest | 4 65 | |
| Non Accrual Int Receipt | 12 06 2019 | 12 06 2019 | | Non Accrual Interest | 4 64 | |
| Non-Accrual Int Receipt | 12 07 2019 | 12 07 2019 | | Non Accrual Interest | 4 65 | |
| Non Accrual Int Receipt | 12 08 2019 | 12 08 2019 | | Non Accrual Interest | 4 64 | |
| Non Accrual Int Receipt | 12-09 2019 | 12 09 2019 | | Non-Accrual Interest | 4 64 | |
| Non-Accrual Int Receipt | 12 10 2019 | 12 10 2019 | | Non Accrual Interest | 4 65 | |
| Non Accrual Int Receipt | 12 11-2019 | 12 11-2019 | | Non Accrual Interest | 4 64 | |
| Non Accrual Int Receipt | 12-12 2019 | 12-12 2019 | | Non-Accrual Interest | 4 64 | |
| Non Accrual Int Receipt | 12 13 2019 | 12 13 2019 | | Non Accrual Interest | 4 65 | |
| Non-Accrual Int Receipt | 12 14 2019 | 12 14 2019 | | Non Accrual Interest | 4 64 | |
| Non Accrual Int Receipt | 12 15-2019 | 12 15-2019 | | Non Accrual Interest | 4 64 | |
| Non Accrual Int Receipt | 12 16 2019 | 12 16 2019 | | Non Accrual Interest | 4 65 | |
| Non Accrual Int Receipt | 12 17 2019 | 12 17 2019 | | Non Accrual Interest | 4 64 | |
| Non Accrual Int Receipt | 12-18 2019 | 12 18 2019 | | Non Accrual Interest | 4 64 | |
| Non Accrual Int Receipt | 12 19 2019 | 12 19 2019 | | Non Accrual Interest | 4 65 | |
| Non-Accrual Int Receipt | 12 20 2019 | 12 20 2019 | | Non Accrual Interest | 4 64 | |
| Non Accrual Int Receipt | 12 21 2019 | 12 21 2019 | | Non Accrual Interest | 4 65 | |
| Non Accrual Int Receipt | 12 22 2019 | 12 22 2019 | | Non Accrual Interest | 4 64 | |

Debbie L  Mize
1642 Joplin Circle
Elk Grove Village  IL  60007

Transaction History Account Number
10 01 2018 to 01 16 2020

| Description | Eff Date | Post Date | Due Date | Balance Type | Amount | Running Bal |
|---|---|---|---|---|---|---|
| Non Accrual Int Receipt | 12 23 2019 | 12 23 2019 | | Non Accrual Interest | 4 64 | |
| Non Accrual Int Receipt | 12 24-2019 | 12 24 2019 | | Non Accrual Interest | 4 65 | |
| Non-Accrual Int Receipt | 12 25 2019 | 12 25 2019 | | Non Accrual Interest | 4 64 | |
| Non Accrual Int Receipt | 12 26 2019 | 12 26-2019 | | Non Accrual Interest | 4 64 | |
| Non Accrual Int Receipt | 12 27 2019 | 12 27 2019 | | Non Accrual Interest | 4 65 | |
| Non Accrual Int Receipt | 12 28 2019 | 12 28 2019 | | Non Accrual Interest | 4 64 | |
| Non Accrual Int Receipt | 12 29 2019 | 12 29 2019 | | Non-Accrual Interest | 4 64 | |
| Late Charge Assessment | 12 30-2019 | 12 30 2019 | | Late Charge Balance | 20 00 | |
| Non Accrual Int Receipt | 12 30 2019 | 12 30 2019 | | Non Accrual Interest | 4 65 | |
| Non Accrual Int Receipt | 12 31 2019 | 12 31 2019 | | Non Accrual Interest | 4 64 | |
| Non-Accrual Int Receipt | 01 01 2020 | 01 01 2020 | | Non Accrual Interest | 4 24 | |
| Non Accrual Int Receipt | 01 02 2020 | 01 02-2020 | | Non Accrual Interest | 4 24 | |
| Non Accrual Int Receipt | 01 03 2020 | 01-03 2020 | | Non Accrual Interest | 4 24 | |
| Non Accrual Int Receipt | 01 04 2020 | 01 04 2020 | | Non-Accrual Interest | 4 24 | |
| Non Accrual Int Receipt | 01 05-2020 | 01 05 2020 | | Non Accrual Interest | 4 24 | |
| Non Accrual Int Receipt | 01 06 2020 | 01 06 2020 | | Non Accrual Interest | 4 24 | |
| Non Accrual Int Receipt | 01-07 2020 | 01 07-2020 | | Non Accrual Interest | 4 24 | |
| Non Accrual Int Receipt | 01 08 2020 | 01-08 2020 | | Non Accrual Interest | 4 24 | |